UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:93-CR-031 |
| | ) | |
| MARK ANTHONY ANDREWS | ) | |

### MEMORANDUM OPINION

Now before the Court is the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as supplemented by counsel. [Docs. 1159, 1169].[1] The United States has responded in opposition to the motion [doc. 1164] and an additional letter of support has been filed on the defendant's behalf. [Doc. 1161].

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be granted.

### I.  BACKGROUND

In 1994, this Court sentenced the defendant to a statutorily mandated net term of Life imprisonment for offenses pertaining to cocaine distribution, money laundering, and possession of unregistered pipe bombs. In particular, the defendant's conspiracy conviction for cocaine distribution (Count Two) carried a mandatory life sentence due to

---

[1] By order entered June 8, 2021, the Court held the defendant's *pro se* motion in abeyance pending submission of his Bureau of Prisons medical records. [Doc. 1165]. Those records have now been filed. [Doc. 1169, ex. 1].

his two prior felony convictions for possession of cocaine. *See* 21 U.S.C. § 841(b)(1)(A) (1994).[2]

The defendant is presently housed at FCI Coleman Medium. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 19, 2021). He moves for compassionate release due to the COVID-19 pandemic, hypertension, stage III kidney disease, asthma, obesity, his age (54) and race (African-American), and his rehabilitative efforts. The defendant also argues that he would receive a significantly lesser term of imprisonment if sentenced today under current law.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

---

[2] The Court has reviewed its judgment and the minutes of its sentencing hearing [docs. 852, 862] and finds that no term of supervised release was imposed in this case. The United States Probation Office has reviewed its records and is in agreement. In 1994, it would have been the practice in this judicial district to not impose supervised release in cases where the term of imprisonment was Life.

18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant.  *See* 18 U.S.C. § 3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf.  *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes.  District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP).  *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[3]  "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

**A. Exhaustion**

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden.  [Doc. 1159, ex. 1].  The Court thus has authority under § 3582(c)(1)(A) to address the instant motion.  *See Alam*, 960 F.3d at 832.

---

[3] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

## B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, stage III kidney disease, asthma, obesity, his age (54) and race (African-American), and his rehabilitative efforts. The defendant also argues that he would receive a significantly lesser term of imprisonment if sentenced today under current law.

The Court begins its "extraordinary and compelling reasons" discussion with the last of these arguments. The United States concedes that if the defendant were sentenced today he would not be subject to a mandatory Life sentence, but the United States further points out that the pertinent changes in the law are not retroactive. [Doc. 1164, p. 5]. The United States further estimates that the defendant's present advisory guideline range would only be 262 to 327 months [*id.*, n. 2], which is less than the 340 months that the defendant has already served, *exclusive of good time credit*. [*Id.*, ex. 1].

Viewed as a matter of equity, those are compelling facts. However, the Court wishes to stress that it has <u>not</u> considered this issue in its "extraordinary and compelling reasons" analysis. As the Court observed in its order holding the defendant's *pro se* motion in abeyance,

> evolving and at times clashing authority from the Sixth Circuit Court of Appeals dictates that a non-retroactive change in the law cannot serve as an extraordinary and compelling basis for relief, whether alone or in combination with other factors. *Compare United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. Mar. 9, 2021) (The compassionate release statute cannot be used "as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms."), *with United States v. Owens*, 996 F.3d 755, 763-64 (6th Cir. May 6, 2021) (Remanding, *Tomes* notwithstanding, for the district court "to consider whether Owens's rehabilitative efforts and the lengthy sentence he received because of exercising his right to a trial may, in combination with the First Step Act's changes to § 924(c), constitute an extraordinary and compelling reason for compassionate release."), *with United States v. Jarvis*, [999 F.3d

4

442, 446] (6th Cir. [] 2021) ("*Tomes*, decided before *Owens*, 'remains controlling authority' . . . . A faithful reading of *Tomes*, we respectfully submit, leads to just one conclusion: that it excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors.").

[Doc. 1165, p. 2].

The Court thus turns to the defendant's medical arguments. At the defendant's correctional institution, there are currently zero inmates and two staff positive for COVID-19, with 318 inmates and 59 staff having recovered, and three inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 19, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains on alert in terms of COVID diagnoses, hospitalizations, deaths, emerging variants, and lagging vaccination rates. Further, the COVID-19 pandemic cannot *alone* justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, the BOP's vaccination efforts are underway, with 547 staff and 3,789 inmates having been fully vaccinated at the defendant's correctional complex. *See* Bureau

of Prisons, https://www.bop.gov/coronavirus/ (last visited July 19, 2021). The defendant himself has now been fully vaccinated. [Doc. 1169, ex. 1].

BOP medical records show that the defendant has been diagnosed with hypertension, unspecified asthma, knee pain, "chronic right leg pitting edema," chronic stage III kidney disease, and varicose veins. [*Id.*]. Although the defendant characterizes himself as obese, he is in fact only "overweight." As of June 3, 2021, he weighed 230 pounds and stood 75 inches tall [*id.*], resulting in a body mass index ("BMI") of 28.7. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited July 19, 2021). Persons with a BMI of 30 or greater are considered obese, and persons with a BMI of at least 25 but less than 30 are deemed overweight. *Id.*

Being overweight can make one more likely to become severely ill if infected with COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 19, 2021). The same is true for people who have hypertension or chronic kidney disease. *Id.* The risk of severe COVID-19 complications also increases with age, and is also greater for persons from ethnic minorities. *Id.* Moderate to severe asthma further increases the risk, *id.*, but the record before the Court does not confirm that the defendant's asthma is of that degree.

The defendant's bundle of aggravating risk factors for COVID-19, paired with his remarkable post-sentencing rehabilitation, leads the Court to find extraordinary and compelling grounds for compassionate release. Although the defendant is now fully

vaccinated, he correctly points out that the vaccine does not provide absolute immunity from the virus, nor are its protections permanent. As noted above, our nation is far from out of the woods in its fight against the COVID-19 pandemic.

The Court will discuss the defendant's post-sentencing transformation at length below, and the Court is mindful of Congress's directive that, in the context of 18 U.S.C. § 3582(c)(1)(A), "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t) (emphasis added). In tandem with the defendant's cited health conditions, however, the defendant's remarkable rehabilitation constitutes extraordinary and compelling reasons in this case.

Consistent with § 3582, the Court must next consider the parties' arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As for the nature and circumstances of this case, the defendant's criminal conduct was indeed serious. He participated in a large-scale cocaine conspiracy for more than three years, thereby causing great harm. [Presentence Investigation Report ("PSR"), ¶ 31]. He

held a managerial role and he transported kilogram quantities of cocaine. [*Id.*, ¶¶ 23, 31]. The defendant was held accountable for numerous firearms and, at one point, he possessed pipe bombs. [*Id.*, ¶¶ 31, 50].

Additionally, there are prior cocaine convictions from the late 1980s. [*Id.*, ¶¶ 76-77]. At the time of sentencing in this case, the defendant had no verifiable employment history. [*Id.*, ¶ 86].

According to the defendant, "In the beginning of my incarceration I held this resentment towards the Justice System . . . for many reasons. . . . Nonetheless, I had to come to grips with the fact that I must pay my debt to society. So, determine[d] to do a 180 degree about-face and turn this so-call[ed] negative into a positive, I began to educate myself and refrain from all criminal thinking." [Doc. 1159, p. 2].

Those words appear to be true. As mentioned above, the defendant has been in custody for the past 340 months. According to his BOP SENTRY Report, during those 340 months he has incurred *zero* disciplinary sanctions. In 2000, the defendant earned his GED. He is employed and has completed more than 1,600 hours of vocational training, along with other coursework.

Two BOP memoranda are appended to the defendant's motion. In April 2020, Dr. D. Arbutina, Drug Abuse Program Coordinator, wrote that

> Inmate ANDREWS currently participates in the Inmate Companion Program. He has been an active participant in the program since September 2010.
>
> As an Inmate Companion, Inmate ANDREWS demonstrates a solid work ethic, is professional, and respectful to both staff and inmates. As part of his duties as an Inmate Companion he is expected to display empathy, professionalism, appropriate boundaries, and have an applied knowledge of a variety of mental health topics. For example, through his active participation in this program,

Inmate Andrews has gained and applied his knowledge in the areas of suicide prevention, mental health disorders, managing difficult individuals, and appropriate documentation of legal papers.

[Doc. 1159, ex. 1].

In May 2020, P. Benitez, Ph. D., wrote at greater length. [*Id.*].

Inmate Andrews serves as a Mental Health Companion (Mentor) in the Skills Program at FCC Coleman Medium. . . .

Inmate Andrews has been a Mental Health Companion for over 10 years and is one of the most respectful, caring, and compassionate mentors in the program. He cared for a [sic] Skills Program participants, with severe mental illness including but not limited to Traumatic Brain Injury, Advanced Dementia, Intellectual Disability, Autism, Psychotic Disorders, Delusional Disorders, Bipolar Disorders, etc. and who are very difficult to live with. . . . However, Inmate Andrews cared for them and never requested a cellmate change even after residing with the same participant at [a] time [for] over a year. Andrews has demonstrated incredible patience, tolerance and compassion. He performs duties for inmates in the program that would otherwise be performed by [a] nurse assistant in the civilian world. Inmate Andrews has never once complained or refused to continue assisting low functioning/autistic or brain injured patients/inmates. . . . He has taken the most difficult, mentally ill and/or low functioning inmates under his care. In the eight years that I have personally worked with Inmate Andrews he has conducted himself as an honest, responsible, and dependable individual. He is a caring, compassionate, gentle and selfless individual.

. . .

. . . Since his assignment as a MH Companion/Mentor Inmate Andrews has offered guidance, support, and life skills tutoring to Skills Program participants. He consistently helps participants in the development of basic life, social, communication, coping, and relational skills. Inmate Andrews takes his work detail as a MH Companion/Mentor seriously. He has been a positive role model and a positive influence in the Skills Program Unit.

Inmate Andrews assists staff by providing feedback and outlining solutions to problems that if not addressed could lead to serious safety and security issues. Inmate Andrews continues to demonstrate willingness to assist Skills Program participants with their treatment and/or GED daily activities. Inmate Andrews presents with good character and communication skills. He helps mediate issues between inmates while remaining objective and fair. He is humble, soft-

spoken and caring. He never resorts to using an aggressive style to get his point across.

Inmate Andrews is self-disciplined and self-motivated. He is open to both receiving and providing feedback to others. He carries himself in a manner respected by both staff and inmates.

. . .

. . . Inmate Andrews has demonstrated empathy towards those less fortunate due to their mental or physical disabilities. He has taken seriously low functioning and/or mentally ill inmates under his care without compliant. His care for the wellness of others appears genuine and is greatly admired.

. . .

As a Mental Health Companion in the Skills Program, Inmate Andrews [has] maintained a positive energy while caring for his cellmates . . . . Inmate Andrews is self-motivated and love[s] to work with his assigned participants.

Inmate Andrews has built a good reputation because he is reliable, credible, independent and due to his non-aggressive style. . . .

. . . He has assisted this writer by facilitating self-help groups in the Skills Program . . . . He has worked on his personal rehabilitation via participating in programs and implementing skills learned.

. . .

Great prognosis is expected, as Andrews is able to find appropriate solutions to problems, remain objective, make better decisions and understands the chain effect of his actions on other[s]. Inmate Andrews is expected to continue practicing the concepts learned in this program and maintain a criminal free lifestyle in society.

[*Id.*].

The defendant has submitted a proposed release plan. [*Id.*]. At the Court's request, the probation office has investigated the proposed release plan and has found it to be acceptable.

As summarized herein, the Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. Having done so, the Court concludes that the defendant's motions should be granted.

The defendant's offense conduct undoubtedly caused great harm to this region. A harsh sentence was called for. The Court finds that a harsh sentence has indeed been served, and it has been served as admirably as could ever have been hoped. The defendant has plainly taken advantage of the rehabilitative programming offered by the BOP and has meaningfully mentored others. The Court—solely in its consideration of the 3553(a) factors—also notes the equitable consideration that, exclusive of good time credit, the defendant has already served a sentence in excess of what the United States presumes his advisory guideline range would be if sentenced today under current, non-retroactive, law.

The facts of this case indicate that the defendant has been adequately deterred and now poses minimal risk. Although the current prison sentence is Life, the Court finds that factor, and any resulting sentencing disparity, to be substantially outweighed by the defendant's unique post-offense rehabilitation.

Having considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments of the parties, the Court finds extraordinary and compelling reasons justifying the requested compassionate release. The Court concludes that continued incarceration would not serve the goals of sentencing as set forth in the § 3553(a) factors.

## III. CONCLUSION

As provided herein, the defendant's motions for compassionate release [docs. 1159, 1169] will be granted. The defendant's term of imprisonment will be reduced to time served, with no term of supervised release to follow.[4]

An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

---

[4] The Court lacks authority to undo the omission of a supervised release term in the original judgment. *See generally United States v. Robinson*, 368 F.3d 653 (6th Cir. 2004); *United States v. Burd*, 86 F.3d 285 (2d Cir. 1996).